IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER FENTON<br>1126 Diamond Avenue<br>Scranton, PA 18508<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DOLLAR TREE STORES, INC., d/b/a<br>DOLLAR TREE<br>500 Volvo Parkway<br>Chesapeake, VA 23320<br><br>　　　　　Defendant. | CIVIL ACTION<br><br>No.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Jennifer Fenton, by and through her undersigned counsel, hereby avers as follows:

### I.　　INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Dollar Tree Stores, Inc., d/b/a Dollar Tree for violations of the Family and Medical Leave Act ("FMLA – 29 U.S.C. §§ 2601, *et. seq*.). Plaintiff was unlawfully terminated by Defendant, and she suffered damages more fully described/sought herein.

### II.　　JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice,

satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

## II.    PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Dollar Tree Stores, Inc., d/b/a Dollar Tree ("Defendant") is a nationwide retailer headquartered in Virginia at the above-captioned address. Defendant operates more than 10,000 locations and regularly employs in excess of 10,000 employees as well.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV.    FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff was hired by Defendant effective on or about September 6, 2006; and in total, Plaintiff was employed with Defendant for approximately 15 years.

11. Plaintiff was employed with Defendant as a Store Manager, and she was overseen by Manav (a/k/a Romy) Mehta ("Mehta"). Mehta was a Regional Director of Defendant overseeing stores such as the one wherein Plaintiff was employed.

12. Plaintiff worked for Defendant as a Store Manager at its 610 Commerce Boulevard, Wilkes-Barre Township, PA 18702 location (the "Wilkes-Barre location").

[A] **Plaintiff's Wrongful Termination Claim**

13. Plaintiff's last day of *physical* work with Defendant was on or about February 13, 2021.

14. Plaintiff required a medical leave of absence commencing in mid-February 2021 because she had to provide care for her son whose initials are "CS."[1] CS suffers from severe autism, is unable to care for himself, and although he is 15 years old, he has the mentality of an approximate 5-year-old child. CS has many other health-related complications as well.

15. During (and due to) the COVID-19 pandemic, Plaintiff lost a long-term and qualified caregiver who cared for her son. Plaintiff's son, CS, requires 7-day per week, 24-hour per day oversight and care. Plaintiff was at all relevant times a single mother (as CS's father died).

16. Plaintiff informed Mehta and Defendant's human resources of her need to provide medical care for her son. She kept them apprised of such medical-care needs in February and March (within the late winter and spring of 2021).

17. Through all of 2021, Plaintiff was FMLA eligible, as she: (a) worked for a large enough employer engaging in interstate commerce; (b) worked at least 1,250 hours in the

---

[1] Initials are used herein because Plaintiff's son is a minor and for legally-permissible privacy purposes.

3

preceding year; (c) had been employed for well in excess of one (1) year; and (d) her son indisputably had serious health conditions as defined by the FMLA.

18.     Plaintiff was grossly misled and misinformed by Mehta and Defendant's human resources department about her FMLA rights, entitlements, and ability to exercise her FMLA leave. As a direct, proximate and actual cause of Defendant's misinformation and unlawful directives, Plaintiff's termination ensued as follows.

19.     Plaintiff was informed by Defendant's management that from mid-February 2021 through March 12, 2021 she was to use her accrued sick, PTO or vacation time. Plaintiff was informed she would then be potentially eligible for FMLA coverage <u>after</u> accrued or paid-time off exhaustion.

20.     Plaintiff had attempted to submit FMLA paperwork supporting her need for medical leave. However, Plaintiff was told by Mehta and Defendant's human resources personnel that she was not permitted to use FMLA from mid-March 2021 and thereafter <u>unless</u> she could provide an "exact return date." In fact, they demanded *due to business needs* that she only submit FMLA information if she could return by no later than the first week of April, 2021.

21.     In discussions with Mehta and Defendant's human resources, Plaintiff was told she was point-blank prohibited from submitting for or using FMLA as of mid-March and thereafter due to her inability to identify an "exact return date." Plaintiff was attempting to arrange for alternative medical care for her son as quickly as possible so she could resume working. She pleaded with Defendant's management explaining she could not give an exact date or commit to a definite return as (unlawfully) required in the first week of April, 2021.

22.     Plaintiff was also told in no uncertain terms as of March 2021 by Mehta and human resources that her FMLA would be denied for inability to provide an "exact return date,"

and thus she would no longer be working. By the end of March 2021, Plaintiff was operating under the assumption that she was no longer employed with Defendant and effectively terminated.

23.     By letters dated April 5, 2021, Plaintiff received a flurry of notices from Sedgwick Claims Management ("Sedgwick"). One notice identified Plaintiff had been on approved FMLA from February 12, 2021 through March 13, 2021. Another (separate notice) identified Plaintiff was denied FMLA leave from March 14, 2021 through April 5, 2021 for insufficient "supporting documentation." It was as if Defendants elected to address Plaintiff's FMLA requests from 1-2 months earlier all at one time (in early April, 2021) after she had already been told she couldn't use FMLA and was effectively terminated.

24.     Plaintiff was not sent multiple types of notices, rights, expectations, or obligations within 5 days or as soon as practicable mandated within the FMLA regulations. And Plaintiff was misled that in order for her to utilize FMLA she has to specific an exact date of return. Indeed, the FMLA protects and employee's job <u>for up to 12 weeks</u> by federal law *regardless* of whether a date is specified for return.

25.     Plaintiff was functionally terminated (regardless of how it was characterized within Defendant's employment database or system) within approximately a month of using FMLA.

26.     Had Plaintiff been properly placed on FMLA and not informed of her prohibition from using FMLA under false pretenses, Plaintiff would have found alternative care for her child **<u>within</u>** 12 weeks from leave commencement. In fact, Plaintiff should have been eligible for FMLA through the first half of May, 2021 (if FMLA commenced in mid-February or through early June, 2021 if FMLA commenced in mid-March, 2021).

27. Plaintiff was thus terminated by Defendant during FMLA-qualifying leave unlawfully. Defendant's FMLA violations were so egregious, Plaintiff had even offered to work a reduced schedule or part-time due to care needs for her child. But Plaintiff was not offered intermittent or reduced-schedule leave (other express forms and entitlements of FMLA leave *mandated* under such regulations). Such actions and omissions constitute both interference and retaliation.

### [B] Wrongful / Retaliatory Non-Rehire or Reinstatement

28. In early November of 2021, Plaintiff learned that a store manager would be needed in a grossly underperforming store for Defendant (a geographically close but different store than her prior Wilks-Barre location).

29. Plaintiff spoke with Mehta on or about November 9, 2021 who confirmed he was hiring a store manager at an underperforming location. Plaintiff had substantially repaired the reputation and income generation *at this same location in the past (years prior)*. It had since drastically deteriorated under subsequent management.

30. Mehta led Plaintiff to believe that she could commence employment and would be hired effective November 22, 2021. Plaintiff was informed however that instead of her prior salary she would earn $50,000.00 per year. Strong desiring any reemployment, Plaintiff accepted the salaried position as store manager for Defendant.

31. Leading up to November 22, 2021, Plaintiff was not being contacted or having any of her calls returned (after November 9, 2021 discussions). She only knew that: (a) a store manager was being hired; (b) she had a start date per her call with Mehta; and (c) she was to commence employment at a reduced salary at a set location on November 22, 2021. Her hiring

terms were clear, as was her start date. But she was not being provided with any follow-up confirming correspondence or HR-related documentation.

32. Being a consummate professional and to be prepared, Plaintiff stopped by the store where she was supposed to commence working a few days early (on or about November 20, 2021). She just wanted to see the store layout, to know what she was getting into, and was even hopeful Mehta may have been there to talk to her. It was a disaster in that store and being run awfully (and Mehta was not present).

33. On or about November 21, 2021, 1 day before Plaintiff was to be reinstated or rehired, Plaintiff was finally contacted by Mehta. Mehta told Plaintiff Defendant decided not to reemploy her for any position, including as a store manager.

34. Plaintiff was not reinstated or rehired in November of 2021 at a different location in retaliation for her prior FMLA usage, FMLA exercise, and FMLA needs. Upon information and belief, Defendant reconsidered using Plaintiff and decided not to hire her for unlawful retaliatory criteria as aforesaid.

## First Cause of Action
## Violations of the Family and Medical Leave Act ("FMLA")
(Interreference & Retaliation)

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611.

37. Defendant committed violations of the FMLA by: (1) terminating Plaintiff in retaliation for requesting, needing, and/or utilizing FMLA-qualifying leave; (2) failing to follow many regulations of the FMLA in advising Plaintiff of her rights, entitlements, obligations and

other mandatory notices; (3) lying or falsely stating requirements of the FMLA that did not exist to Plaintiff's detriment or prejudice; (4) not reinstating Plaintiff within 12 weeks, as she could have returned if permitted proper FMLA leave; (5) by illegally denying FMLA leave to Plaintiff; and (6) by failing to reinstate or rehire Plaintiff in November of 2021.

38.   These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.   Defendant is to promulgate and adhere to a policy prohibiting discrimination, interference and retaliation in the future against any employee(s);

B.   Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits.

C.   Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

D.   Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate; and

E.   Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law.

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

By:   _____
        Ari R. Karpf, Esq.
        3331 Street Rd.
        Bldg. 2, Ste. 128
        Bensalem, PA 19020

Date: January 3, 2021