# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER FENTON, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-cv-00002 |
| v. | (SAPORITO, J.) |
| DOLLAR TREE STORES, INC.,<br>d/b/a DOLLAR TREE, | |
| Defendant. | |

## <u>MEMORANDUM</u>

This civil action commenced on January 3, 2022, when the plaintiff, Jennifer Fenton, filed the complaint against her former employer, Doller Tree Stores, Inc. ("Dollar Tree"). In the complaint, Fenton claims that Dollar Tree (1) interfered with the exercise of her rights under the Family and Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq.*, and (2) twice retaliated against her for activities protected by the FMLA. (Doc. 1.) Presently before the court is Dollar Tree's motion for summary judgment. (Doc. 57). For the reasons described below, the motion will be granted in part and denied in part.

## I.   BACKGROUND[1]

Dollar Tree hired Fenton in September 2006 as a part-time cashier, and she steadily rose through the ranks, becoming the store manager of a location in Wilkes-Barre, Pennsylvania in October 2020. As store manager, she reported to Dollar Tree's Regional Director, Manav "Romy" Mehta.[2]

Dollar Tree does not manage leave for its employees, and instead contracts with a third-party, Sedgwick Claims Management Services,

---

[1] In compliance with Local Rule 56.1, Dollar Tree's motion for summary judgment is "accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." (Doc. 46-1.) M.D. Pa. L.R. 56.1. Moreover, each factual statement presented by the defendants in support of their motion for summary judgment "include[s] references to the parts of the record that support the statements." *Id.*; *see also* Fed. R. Civ. P. 56(c)(1).

A party opposing summary judgment is likewise required by the local rules to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs" in the movant's statement of material facts, which must similarly "include references to the parts of the record that support the statements." M.D. Pa. L.R. 56.1. Fenton complied with Local Rule 56.1.

The background facts are taken from Dollar Tree's statement of undisputed material facts, and supplemented with additional facts from the broader record as necessary for context and completeness.

[2] In her response, Fenton disputes this characterization, asserting that she reported to District Manager Randy Remick, and only reported to Mehta in Remick's absence.

Inc. ("Sedgwick"), to manage, among other things, FMLA leave requests. In March 2020, because of the COVID-19 pandemic, Sedgwick implemented a modified process for FMLA leave requests, increasing the amount of time for employees to provide the required Health Care Provider Certification (the "Medical Certification"), from fifteen days to thirty days.[3] Sedgwick also automatically approved FMLA leave for employees who met the Act's eligibility criteria, but still required employees to submit the Medical Certification within the expanded thirty-day period.[4]

Fenton's minor son, C.S., suffers from severe autism, and was cared for either at his school, by his grandmother, or through Tri-Valley Care, Inc. ("Tri-Valley"), which provided an aide, while she worked. Due to the COVID-19 pandemic, C.S.'s school transitioned to remote learning, his grandmother was unable to provide care due to an illness, and beginning

---

[3] In her response, Fenton asserts that the modified FMLA leave request process was not implemented until May 2020, and stayed in effect until November 2021.

[4] In her response, Fenton agrees that Sedgwick issued automatic approvals for FMLA leave requests for employees who met the Act's eligibility criteria but asserts that the Medical Certification was not required, pointing to four employees whose leave was approved without the certification: Dipak Shah, Makesha Holmes, Maurice Dawkins, and Thomas Whitmer.

around February 12, 2021, Tri-Valley was unable to provide Fenton with an aide to care for C.S. during the day.

Fenton was out on personal leave from January 13, 2021, until January 26, 2021. Sometime prior to February 12, 2021,[5] Fenton told Mehta by phone that she required FMLA leave to care for C.S. until she could find someone to care for him. According to Fenton, Mehta told her that she needed to exhaust her paid-time off and vacation time prior to using FMLA leave.

On February 12, 2021, Fenton commenced the automatic approval period for her FMLA leave. On March 5, 2021, Sedgwick sent her documentation regarding her request for FMLA leave, including, her case number and that the start date of her leave was February 12; a "Step-By-Step Guide" advising her, among other things, that Sedgwick required the Medical Certification be returned by April 4, 2021; an FMLA "Rights & Responsibilities" fact sheet; an authorization for release and use of medical information; and the Medical Certification form which itself

---

[5] In her deposition, Fenton could not recall the exact date. In an email from Fenton to Mehta dated February 8, 2021, however, Fenton tells Mehta that she needs "to take time off work from 02/20/2021 to 03/13/2021," that she wanted to use her paid time off, and that she called Sedgwick to put in a leave request.

stated the April 4, 2021, deadline to return the form and a warning that
failure to return the form could result in denial of FMLA leave.[6]

Fenton returned the Medical Certification to Sedgwick on March
14, 2021, which stated that she was working with Tri-Valley, and they did
not have an aide for C.S. at that time.[7] The Medical Certification was
incomplete, as Fenton did not have a doctor for C.S., instead giving the
form to Tri-Valley to fill out, which does not employ doctors and is not a
health care provider.[8] At some point after Fenton submitted the

---

[6] In response, Fenton denies the facts are undisputed, and asserts
"the cited document speaks for itself and therefore any
mischaracterization of the same is therefore denied." Further, in her
deposition testimony, Fenton claims that she did not receive the entire
packet of information that Sedgwick would typically provide for
employees seeking to take FMLA leave, or, at least, she did not recognize
some of the packet's documents when shown to her.

[7] In her response, Fenton again denies that the facts are undisputed
and states that the document speaks for itself. She further asserts that
she never received any communication from Sedgwick or Dollar Tree
informing her that the Medical Certification form was incomplete or
insufficiently filled out.

[8] In her response, Fenton states that the facts are disputed, but
agrees that she received the Medical Certification form on March 5, 2021,
that she returned the form to Sedgwick on March 14, that Tri-Valley is
not a health care provider, and that she provided Sedgwick with other
documentation supporting her son's autism diagnosis. Further, she
asserts that at no time prior to her termination from Dollar Tree did
anyone inform her in writing that the form was incomplete and that
instead her request for FMLA leave was denied.

incomplete Medical Certification, a representative from Sedgwick, Marcia Garcia, contacted Fenton to inform her that a health care provider needed to complete the Medical Certification, and Fenton understood that her FMLA leave request would be denied if she did not.[9] Fenton did not return a completed Medical Certification.[10]

On April 5, 2021, Sedgwick sent Fenton two separate notifications; first, it notified her that her request for FMLA leave from February 12, 2021, to March 13, 2021, was approved pending return of the completed Medical Certification; and second, it advised her that her leave request from March 14, 2021, to April 5, 2021,[11] was denied because "[She] did

---

[9] In her response, Fenton admits with clarification that Garcia contacted her regarding the incomplete form but asserts that she did not do so in writing. She further admits that she knew her FMLA leave request would be denied but denies knowledge that she could be terminated if she did not provide the form.

[10] In her response, Fenton denies that she did not return the form, but asserts that Tri-Valley did not have any health care providers to complete the form. Instead, she sent Sedgwick supporting documentation of her son's autism diagnosis.

[11] A point of confusion in this case is that Fenton was approved for FMLA leave for the period of February 12, 2021, to March 13, 2021, but not March 14, 2021, to April 5, 2021, despite not returning the Medical Certification in relation to either period of leave. When asked about this, Wendy Pestik, Dollar Tree's Fed. R. Civ. P 30(b)(6) designee, did not know why Fenton was approved for the first period of FMLA leave, but stated that it appeared her second period of FMLA leave was denied for failure

*(continued on next page)*

not provide supporting documentation/certification by the due date."[12]

The same day, Garcia contacted Fenton to inform her that her claim was

denied because she failed to complete the Medical Certification by the

due date, but that upon completion of the Medical Certification, her claim

would be reopened and reviewed.[13] After Sedgwick denied her FMLA

leave request for March 14, 2021, to April 5, 2021, Fenton did not seek to

return to work, she was administratively terminated.[14]

---

to provide the Medical Certification. Dollar Tree's statement of
undisputed facts asserts the packet of information sent to Fenton on
March 5, 2021, noted that her period of leave began on February 12, 2021.
It is not clear from the record, then, why her leave from February 12,
2021, to March 13, 2021, was approved when she did not return the
Medical Certification, but then the subsequent period of leave was
denied.

[12] In her response, Fenton asserts that the document speaks for
itself, that Dollar Tree mischaracterizes it, and that cited deposition
testimony does not support Dollar Tree's assertion.

[13] In response, Fenton restates that she filled out the Medical
Certification and that Tri-Valley is not a healthcare provider, that
Sedgwick did not inform her in writing regarding the issues with the
Medical Certification, and that she provided supporting documentation
about C.S.'s autism diagnosis. In her deposition Fenton admits that
Garcia called her on April 5, 2021, and told her that her leave request
would be reopened upon completion of the Medical Certification by a
doctor.

[14] In her response, Fenton asserts that on April 5, 2021, she
immediately contacted Jeffrey Billingsley, a Regional Human Resources
Manager for Dollar Tree, regarding the denial of her FMLA leave
request. According to Fenton, Billingsley informed her that "because

*(continued on next page)*

On November 9, 2021, Mehta contacted Fenton to inquire whether she would be interested in returning to Dollar Tree as the store manager of a different location.[15] On November 10, 2021, Fenton texted Mehta to give her a call the next day, to which Mehta agreed. On November 11, 2021, Mehta and Fenton spoke by phone, wherein Fenton asked Mehta to which store she would be assigned to. Mehta stated that he could not discuss that detail, but he would set her up with the next steps in the event she could return to work.[16] The next steps included Fenton

---

[she] was out of time as far as [her] sick leave and everything," and she could not provide an exact return date for work, she would be terminated. Fenton further testified that after her conversation with Billingsley, "I'm assuming I'm fired, and I started applying." Effective April 5, 2021, she was administratively terminated. The denial document for her second period of leave states, however, that in the situation where an employee cannot return to work and is administratively terminated, the employee will be eligible for rehire status and will retain the same original hire date and rate of pay if rehired for the same position within ninety days. Fenton also claims she was replaced by two different individuals, one who did not take FMLA leave, and it is unknown whether the other individual took FMLA leave.

[15] In her response, Fenton only denies that Mehta communicated about being a store manager at "another location," though by way of further response, Fenton asserts that Mehta inquired whether she would be interested in managing Dollar Tree's "Southside" location.

[16] In her response, Fenton asserts that she and Mehta spoke about salary, and specifically, that Mehta agreed she would be the store manager at the Southside store with a salary of $50,000. After this phone call, on an unknown date, Fenton contacted Mehta by phone regarding her employment status, to which Mehta stated she was no longer needed.

applying for a particular store and completing an employment application, an interview with the district manager, discussions regarding salary and compensation, and background check. Only after those steps would Fenton be given a start date.[17] Fenton never received a letter offering her employment or any other documentation offering her the store manager position.[18] Fenton also never completed the next-steps outline by Mehta, never completed the onboarding process, and was not re-entered into Dollar Tree's system as an employee.[19]

On November 12, 2021, Fenton visited the Southside store (Store No. 03687), entered employee-only areas, looked at security cameras, and told the current store manager, Ashley, when all the store's employees,

---

[17] In her response, Fenton denies that these are the steps she needed to complete before starting and reiterates that Mehta agreed to hire her as the store manager at the Southside location with a salary of $50,000.

[18] In her response, Fenton reiterates that Mehta offered her the position with the above-stated salary.

[19] In her response, Fenton asserts that her deposition testimony does not support that she never completed the next steps outlined by Mehta, the onboarding process, and was not re-entered into the system. Rather, the testimony states that Fenton was aware that Dollar Tree has an onboarding process wherein an employee completes forms on a computer when hired, but that this process "hadn't happened yet."

including Ashley, should be scheduled to work.[20] Fenton also told Ashley the Southside store was in shambles and not hitting its sales goals, and that Fenton was coming back to fix it.[21] Ashley texted her district manager, John Reichert, about the incident with Fenton and asked for clarification as to what would be happening at the store in the future.

Reichert informed Mehta about Ashley's text. Mehta then called Fenton, who confirmed that she had visited the store. Mehta told Fenton that her behavior was extremely unprofessional, and that Dollar Tree would not proceed with her re-employment.[22]

---

[20] In her response, Fenton admits she visited the store and admits to looking at the store's security cameras. She denies that this occurred on November 12, 2021, and denies entering employee-only areas or telling Ashley when to schedule employees to work. Fenton further asserts that she called Ashley to inform her that she would be returning to work with Dollar Tree and that Ashley invited her to the store to speak with Mehta regarding her employment. Upon arrival, Fenton and Ashley spoke about how to improve the store's conditions.

[21] In her response, Fenton denies that she told Ashley the store was in shambles and not hitting its sales goals and reiterates that she spoke with Ashley prior to coming to the store and intended to speak with Mehta about returning to her employment with Dollar Tree.

[22] In her response, Fenton admits only that Mehta informed her that Dollar Tree would not re-hire her but denies that Mehta advised her about her behavior.

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient

disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. See Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. See Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of

admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III. DISCUSSION

Dollar Tree has moved for summary judgment on each of Fenton's claims under the FMLA.

Under the FMLA, an eligible employee is entitled to a total of 12 workweeks of leave during any 12-month period to care for their spouse, child, or parent, if that family member has a serious health condition. *See* 29 U.S.C. § 2612(a)(1)(C). Regulations further allow an employer to require "that an employee's leave to care for the employee's covered family member with a serious health condition . . . be supported by a certification issued by the health care provider of the employee or the employee's family member . . ." 29 C.F.R. § 825.305(a). "[W]hen an employee returns from such leave, the employer must restore the employee to the same or equivalent position held by the employee when the leave commenced, as well as restore the employee with equivalent benefits and conditions of employment." *Capps v. Mondelez Global, LLC,*

847 F.3d 144, 151 (3d Cir. 2017); *see also* 29 U.S.C. § 2614(a).

As the Third Circuit has explained:

> When employees invoke rights granted under the
> FMLA, employers may not "interfere with, restrain, or
> deny the exercise of or attempt to exercise" these rights.
> Nor may employers "discharge or in any other manner
> discriminate against any individual for opposing any
> practice made unlawful." The former provision is
> generally, if imperfectly, referred to as "interference"
> whereas the latter is often referred to as "retaliation."

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir.

2012) (citations omitted) (quoting 29 U.S.C. § 2615(a)); *see also Capps*,

847 F.3d at 151 (quoting *Lichtenstein*); *Ross v. Gilhuly*, 755 F.3d 185, 191

(3d Cir. 2014) (quoting *Lichtenstein*). In addition, the federal regulations

implementing the FMLA prohibit employers "from discriminating or

retaliating against an employee or prospective employee for having

exercised or attempted to exercise FMLA rights." *Capps*, 847 F.3d at 151

(quoting 29 C.F.R. § 825.220(c)); *see also Lichtenstein*, 691 F.3d at 301

(discussing § 825.200(c)).

Here, Fenton alleges both interference and two instances of

retaliation.

## A. FMLA Interference

To establish an interference claim under the FMLA, a plaintiff must

show that:

> (1) he or she was an eligible employee under the FMLA;
> (2) the defendant was an employer subject to the FMLA's
> requirements; (3) the plaintiff was entitled to FMLA
> leave; (4) the plaintiff gave notice to the defendant of his
> or her intention to take FMLA leave; and (5) the plaintiff
> was denied benefits to which he or she was entitled
> under the FMLA.

*Ross*, 755 F.3d at 191–92; *Capps*, 847 F.3d at 155. "Unlike an FMLA

retaliation claim, an interference action is not about discrimination, it is

only about whether the employer provided the employee with the

entitlements guaranteed by the FMLA." *Capps*, 847 F.3d at 155 (internal

quotation marks and brackets omitted); *see also Ross*, 755 F.3d at 192.

"Under an interference claim, the employee need not show that he was

treated differently than others, and the employer cannot justify its

actions by establishing a legitimate business purpose for its decision."

*Ross*, 755 F.3d at 192 (internal quotation marks and brackets omitted).

Fenton claims that Dollar Tree interfered with her FMLA rights by

discouraging her from taking leave, including by requiring her to first

use paid time off, by not approving the full twelve weeks of leave she was

entitled to under the Act, and by failing to inform her of the consequences

of failing to return the Medical Certification. Fenton claims she only

learned that she could be terminated on April 5, 2021, the day Sedgwick notified her of the denial of her second leave request and the day that Fenton was indeed administratively terminated.

Dollar Tree contends that it is entitled to summary judgment because Fenton cannot satisfy the third or fifth elements of an interference claim—that she was entitled FMLA leave and, accordingly, that she was denied a benefit to which she was entitled under the Act. Dollar Tree's argument is grounded by the undisputed fact that Fenton did not return a completed or sufficient Medical Certification. Here, Dollar Tree, through Sedgwick, automatically approved thirty days of FMLA leave pursuant to Sedgwick's modified process implemented during COVID-19. However, Sedgwick still required that Fenton provide the Medical Certification for this period of leave,[23] and the period of leave after the initial thirty days. Sedgwick sent Fenton a packet of information on FMLA leave, which included the Medical Certification, on March 5, 2021. The Medical Certification had a due date of April 4, 2021.

---

[23] Though, as noted previously, this period of FMLA was approved without the Medical Certification, which is either a concession that she was entitled to the leave or that she was given leave that she may not have been entitled to under the Act.

Fenton does not genuinely dispute that she failed to fill out the Medical Certification. Instead, she asserts that she sent the Medical Certification to Tri-Valley, which by her own account is not a health care provider and does not employ doctors who could complete the form. She further asserts that she provided supporting documentation of C.S.'s autism diagnosis, though does not cite to any statutory or regulatory provision providing for prior medical documentation as a substitute for the Medical Certification.

In her opposition brief, Fenton hinges her argument on the FMLA's regulations regarding the method and timing requirements for submitting and curing deficiencies in the Medical Certification. Pursuant to 29 C.F.R. § 825.305(b), an employee must provide the requested certification to the employer within fifteen calendar days[24] of the employer's request "unless it is not practicable under the particular circumstances to do so despite the employee's diligent good faith efforts . . . ." 29 C.F.R. § 825.305(b). If an employee submits an insufficient or incomplete certification, the employer must inform the employee in

---

[24] Due to the COVID-19 pandemic, Sedgwick expanded this to thirty days.

writing what additional information is necessary to make the certification complete and sufficient, and must give the employee seven days to cure the certification. 29 C.F.R. § 825.305(c). If the certification is still insufficient or incomplete after the employee has been given an opportunity to cure it, the employer can properly deny the requested leave. *Hansler v. Lehigh Valley Health Network*, 798 F.3d 149, 153 (3d Cir. 2015).

Fenton argues that not only was she never given written notice of the deficiencies, but that it would not have been practicable for her to provide the Medical Certification under the circumstances and despite her good faith efforts, and further, the Medical Certification requirement was selectively enforced.[25] Here, Fenton provided the Medical Certification to Sedgwick on March 14, 2021, which was not completed by a health care provider. However, the record is devoid of evidence that Sedgwick ever provided Fenton with notice, in writing, as required by the relevant regulation. Dollar Tree asserts that "[o]n March 26, 2021—9 days before the April 4, 2021 due date—Plaintiff was contacted by Marcia

---

[25] Aside from the fact that a period of FMLA leave was approved for the four individuals in question, there is nothing in the record showing that these individuals were otherwise similarly situated to Fenton.

Garcia, a representative from Sedgwick, and advised that the certification she submitted needed clarification, particularly the response to question No. 4, and was missing a signature from the medical provider," citing to Fenton's deposition testimony. The cited deposition testimony does not mention the March 26 date, instead, Fenton merely testified that she had a conversation with Garcia "after" she submitted the Medical Certification on March 14, 2021. Further, the testimony refers to a phone conversation between Fenton and Garcia regarding the deficiencies, rather than written communication between Fenton and Sedgwick.

We find that Fenton has presented a genuine dispute of material fact with respect to whether Sedgwick provided her with the required opportunity to cure the deficiency in the Medical Certification, and thus, whether she was denied benefits she was entitled to under the Act.[26]

---

[26] Though a non-precedential opinion, the Third Circuit has followed Supreme Court precedent holding that the FMLA did not intend "[t]echnical rules and burdensome administrative requirements . . . [to] impose unforeseen liabilities and discourage employers from adopting policies that [are more generous to employees] than the basic federal requirements." *Watson v. Drexel Univ.* 2021 WL 4429826 * 8-9 (3d Cir. Sept. 27, 2021) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 95 (2002). Here, the requirement that the notice of insufficiency or *(continued on next page)*

Accordingly, the court will deny summary judgment with respect to Dollar Tree's FMLA interference claim.[27]

## B. FMLA Retaliation

Fenton claims two separate instances of FMLA retaliation. First, she alleges she was terminated on April 5, 2021, after Sedgwick denied her FMLA leave request. Second, she alleges that Dollar Tree's failure to rehire her in November 2021 was related to her request for FMLA earlier in the year.

To establish a retaliation claim under the FMLA, a plaintiff must show that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at

---

incompleteness of the Medical Certification be in writing is less availing than whether Sedgwick actually provided her with sufficient time to cure the deficiency.

[27] However, this only applies to the period from March 14, 2021, to April 5, 2021, as Dollar Tree approved Fenton's FMLA leave from February 21, 2021, to March 13, 2021, and she was not denied benefits to which she was entitled, and thus cannot show she suffered any prejudice. Further, Fenton's claim that she was discouraged from using FMLA leave because Mehta told her she needed to use paid time off first is unavailing. The FMLA allows an employer to require an eligible employee to use accrued paid leave prior to the commencement of the twelve-week FMLA leave. *Majewski v. Fischi*, 372 F. App'x. 300, 305 (3d Cir. 2010) (citing 29 U.S.C. § 2612(d)(2)(B)).

301–02; *see also Capps*, 847 F.3d at 152 n.6; *Ross*, 755 F.3d at 193; *Duran v. Cty. of Clinton*, 380 F. Supp. 3d 440, 451 (M.D. Pa. 2019); *Murray v. JELD-WEN, Inc.*, 922 F. Supp. 2d 497, 513 (M.D. Pa. 2013). "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Lichtenstein*, 691 F.3d at 302.

There is no dispute that Fenton invoked her right to FMLA-qualifying leave, and there is no dispute that she suffered an adverse employment decision—her termination and failure of Dollar Tree to re-hire her. But Dollar Tree contends that Fenton has failed to adduce sufficient evidence to satisfy the third element of a retaliation claim.

With respect to the third element, causation, this court has observed that:

> The quality of evidence in a civil rights action will usually determine which [causation] framework applies. Traditionally, direct-evidence claims have been analyzed under the mixed-motives theory articulated in *Price-Waterhouse v. Hopkins*, [490 U.S. 228 (1989)], and circumstantial-evidence claims have been governed by the burden-shifting ["pretext"] paradigm outlined in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)]. However, the Third Circuit recently held that direct evidence is not required to proceed under a mixed-motives theory of liability for an FMLA claim in light of the Supreme Court's decision in *Desert Palace, Inc. v.*

*Costa*, [539 U.S. 90 (2003)].

*Duran*, 380 F. Supp. 3d at 450 (citation, internal quotation marks, and brackets omitted).

Typically, the court's determination on which framework properly fits the evidence lies at trial. *See May v. PNC Bank*, 434 F. Supp. 3d 284, 295 (E.D. Pa. 2020); *Griffin v. Don E. Bower, Inc.*, Civil Action No. 3:16-2412, 2017 WL 4310091, at *6–*7 (M.D. Pa. Sept. 28, 2017).

> The "mixed-motive" framework is "more lenient" than the "pretext" framework. "The difference is in the degree of causation that must be shown: in a 'mixed motive' case, the plaintiff must ultimately prove that her protected [activity] was a 'motivating' factor, whereas in a non-mixed motive or 'pretext' case, the plaintiff must ultimately prove that her status was a 'determinative' factor."

*Beird v. Lincoln Univ. of the Commonwealth Sys. of Higher Educ.*, 487 F. Supp. 3d 270, 279 n.3 (E.D. Pa. 2020) (citations omitted). Here, the plaintiff has not adduced sufficient evidence to survive summary judgment under either framework, for either instance of alleged retaliation.

Under the *McDonnell Douglas* pretext framework,

> the plaintiff must show that the request for leave or the taking of leave was a determinative factor in the employer's decision[,] after which the burden of

> production shifts to the defendant to show a legitimate,
> nondiscriminatory reason for the firing. The plaintiff
> must then persuade the jury that the proffered reason is
> merely pretext; the burden of persuasion always
> remains with the plaintiff.

*Griffin*, 2017 WL 4310091, at *7 (citation omitted). The plaintiff "must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination." *Lichtenstein*, 691 F.3d at 307. "This analysis frequently turns on one of two criteria: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Duran*, 380 F. Supp. 3d at 451 (internal quotation marks omitted); *see also Capps*, 847 F.3d at 152 & n.6; *Lichtenstein*, 61 F.3d at 307; *Murray*, 922 F. Supp. 2d at 514.

Here, Fenton argues the evidence shows an unusually suggestive temporal proximity between her last protected activity and her termination, noting that the decision to terminate her was made the same day Sedgwick informed her that her second period of leave was denied, which was in days of Sedgwick informing her of the deficiency with the Medical Certification. She further argues that Mehta's discouragement of her taking FMLA leave, the fact she was replaced by

two individuals, one of whom did not take FMLA leave, and that the Medical Certification requirement was selectively enforced against her, shows a pattern of antagonism. Dollar Tree argues that Fenton effectively abandoned her position by not returning to work after her FMLA leave was denied. "Courts have found a lapse of two days to three weeks between protected activity and a retaliatory action to be 'unduly suggestive.'" *Duran*, 380 F. Supp. 3d at 451; *see also Lichtenstein*, 691 F.3d at 307 (collecting cases). Based on the evidence of record, viewed in the light most favorable to the non-moving plaintiff, we find that a reasonable jury could infer a causal link between Fenton's expressed intention to continue her FMLA leave, the ambiguity of the timeframe she was given to cure the deficiency in her Medical Certification, and the decision to terminate her, made the same day her second period of leave was denied.

Fenton having established a prima facie case of causation, the burden of production shifts to Dollar Tree to show a legitimate, nondiscriminatory reason for Fenton's termination. *See Capps*, 847 F.3d at 152. Dollar Tree has met this burden, pointing to Fenton's refusal to return to work after her second period of FMLA leave was denied and she

had no remaining paid time off or sick leave. As Fenton acknowledges, Garcia informed her that her request would be reopened upon proper completion of the Medical Certification. And moreover, Sedgwick's denial letter for Plaintiff's second period of FMLA leave stated that she would be eligible for rehire.

The third step of the *McDonnell Douglas* framework requires a plaintiff to

> identify[] evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that [a retaliatory] reason was more likely than not a motivating or determinative cause of the employer's action. A plaintiff must do more than simply claim a decision was wrong or mistaken to discredit a proffered justification. The plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the employer's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-[retaliatory] reasons.

*Duran*, 380 F. Supp. 3d at 452 (citations, internal quotation marks, and brackets omitted). "[I]f a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of [retaliation] beyond her prima facie case to survive summary judgment." *Burton v.*

*Teleflex, Inc.*, 707 F.3d 417, 427 (3d Cir. 2013); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981) ("[T]his evidence [used by a plaintiff to establish a prima facie case] and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendants' explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.").

Here, we find that Fenton has not presented sufficient evidence of pretext. While true that Fenton was terminated after invoking her rights under the FMLA, not only was she automatically approved for FMLA leave for a period of thirty days, even after the denial of her second period of leave, Sedgwick informed her that upon submission of the completed Medical Certification, that leave period would be reopened for review and potential approval. This fact belies Fenton's allegations of retaliatory intent. She was only terminated because she had no other leave she could use and did not inform Dollar Tree when she would be coming back to work.

It may be true that Fenton has raised a material dispute of fact with

respect to her interference claim, which does not require discriminatory intent, and that the decision to deny her second period of leave was "wrong or mistaken" given the unclear timeframe she was given to cure the deficiency in her Medical Certification, but what is not true is that she is entitled under the FMLA to simply not return to work indefinitely. Further supporting the lack of retaliatory intent is that Sedgwick's denial later explicitly states that she was eligible for rehire, which, if within ninety days, Fenton would keep her original hire date and the same salary, assuming she was rehired as a store manager. Fenton was granted a period of leave, used paid time off and sick time, had an additional opportunity to submit a completed Medical Certification, and was terminated only after she had no leave left. Accordingly, Dollar Tree's motion for summary judgment will be granted with respect to Fenton's retaliation concerning her April 5, 2021, termination.

We move to Fenton's second retaliation claim, that Dollar Tree failed to re-hire her in retaliation for invoking her rights under the FMLA. This is similarly analyzed under the *McDonnell Douglas* framework. Fenton alleges that Dollar Tree retaliated against her by failing to rehire her in November 2021 because she invoked her rights

under the FMLA earlier in the year. Dollar Tree counters by arguing it had legitimate, non-discriminatory reasons for not rehiring her, namely, that Fenton acted unprofessionally at its Southside store prior to being rehired.

We find that this retaliation claim is not a close call. First, Dollar Tree reached out to Fenton regarding the store manager position at its store, indicating its willingness to rehire her. Second, this occurred seven months after her termination, not remotely close to her invocation of her rights and thus not unduly suggestive of retaliatory intent. Third, and despite Fenton's assertions to the contrary that Dollar Tree "had no other reason except for her FMLA requests and leave not to rehire [her]," it is undisputed that she went to a Dollar Tree location while not an employee, and at the very least, reviewed security footage of the store. While Dollar Tree grounds its argument on pretext, we find that Fenton has not even stated a prima facie case of FMLA retaliation here because nothing in the record supports that the decision not to rehire her was related to her requests for leave under the Act. Fenton's own assertion that the only reason Dollar Tree failed to rehire her was her FMLA requests is unsupported speculation. Accordingly, Dollar Tree's motion for summary

judgment will be granted with respect to Fenton's FMLA retaliation claim.

## IV.   CONCLUSION

For the foregoing reasons, Dollar Tree's motion for summary judgment will be granted in part and denied in part. Fenton's FMLA interference claim will proceed, but her retaliation claims will be dismissed.

Dated: October 2, 2024                          *s/Joseph F. Saporito, Jr.*
                                                **JOSEPH F. SAPORITO, JR.**
                                                **United States District Judge**